UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| STEPHANIE DEJEAN | * | CIVIL ACTION NO. 14-2568 |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE WHITEHURST |

### REPORT AND RECOMMENDATION

This social security appeal was referred to me for review and Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Stephanie Dejean, born December 2, 1957, filed applications for a period of disability, disability insurance benefits and supplemental security income on September 14, 2011, alleging disability as of January 31, 2011, due to inflammatory arthritis and high blood pressure.

### I. STANDARD OF REVIEW

The Court limits its review of a denial of disability insurance benefits to two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's decision is supported by substantial evidence on the record as a whole.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1988).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971).  Substantial evidence is defined as more than a mere scintilla.  *Id*., 402 U.S. at 401, 91 S.Ct. at 1427.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.

The Court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder.  *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  If substantial evidence supports the administrative finding, the Court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations.  *Id*.

## II. BURDEN OF PROOF

Disability is defined as " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant.  *Cook,* 750 F.2d at 393.

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled.  *Ramirez v. Colvin*, 606 F. App'x 775, 778 (5th Cir. 2015).  The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof is on the claimant at the first four steps.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can

perform.  *Fraga v. Bowen*, 810 F.2d 1296, 1301-02 (5th Cir. 1987).  If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified.  *Id*. at 1302.  Throughout the process, the ultimate burden of establishing disability remains with the claimant.  *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

### III. ANALYSIS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled.  However, I recommend that this matter be remanded for further administrative action based on the following:

### A. Medical Evidence

Claimant complains of inflammatory arthritis and high blood pressure.  Records from Teche Action Clinic ("Teche") show that on April 28, 2011, she reported right knee pain for six months.  (Tr. 203).  She had a history of fracturing her right leg years prior in a motor vehicle accident.

On examination, her blood pressure was 140/80.  (Tr. 204).  Her gait was guarded.  Right lower extremity was edematous, and palpation crepitus with passive range of motion.  She had no joint instability, and motor examination was normal.

The assessment was unspecified essential hypertension and osteoarthritis primarily involving the right lower leg.  (Tr. 207).  She was prescribed Lisinopril-HCTZ for high blood pressure and Diclofenac sodium, a nonsteroidal anti-inflammatory drug ("NSAID"), for pain.

On May 31, 2011, claimant reported initially having some improvement with the NSAID, but then it had stopped working. (Tr. 206). On examination, she had mild swelling in both lower extremities. (Tr. 207). She was given Depo Medrol and Toradol injections, and prescribed Tramadol for pain. (Tr. 208).

On June 15, 2011, claimant presented to the orthopedic clinic at Leonard J. Chabert Medical Center ("Chabert") with complaints of right knee pain. (Tr. 221-22). Right knee x-rays taken on September 12, 2011, revealed mild arthritic changes in the right knee with diffuse narrowing of the right joint space, and suggestion of a small right-sided knee joint effusion. (Tr. 224). The plan was a right knee injection. (Tr. 218).

On June 30, 2011, claimant returned to Teche for followup, walking with a cane. (Tr. 212). Examination revealed no joint instability of the right knee, but it was swollen. (Tr. 213). Left lower extremity had palpation crepitus with passive ROM. She was prescribed Tramadol and steroids, to which she responded well. (Tr. 212). She was able to walk without crutches.

Claimant was evaluated at Chabert on September 12, 2011, for right knee pain. (Tr. 218). The assessment was osteoarthritis and valgus.[1] She was given an injection.

On November 2, 2011, claimant returned to Teche, complaining that Tramadol had not helped, and that her right knee pain was worse with weather change. (Tr. 232). Her right lower extremity was swelling, and she had palpation crepitus with passive range of motion. (Tr. 233). Range of motion was restricted secondary to pain. She had a bony deformity to the right knee. Motor exam was normal.

---

[1] Latin adjective describing any joint in an extremity that is deformed such that the more distal of the two bones forming the joint deviates away from the midline, as in knock-knee. [Mod. L. turned outward, fr. L. bow-legged]. STEDMAN'S MEDICAL DICTIONARY 966130 (Database updated November 2014).

Claimant was evaluated at Chabert on March 12, 2012, for bilateral knee osteoarthritis, right greater than left. (Tr. 275). An x-ray revealed possible early arthritic changes in the hip and narrowing of the right knee joint space. (Tr. 276).

On April 30, 2012, claimant was walking with crutches due to bilateral knee pain. (Tr. 236). She complained of continued right knee pain again on May 21, 2012. (Tr. 238). Right and left lower extremity examination was normal. (Tr. 239). She was given a Depo Medrol injection. (Tr. 240).

On September 11, 2012, claimant complained of bilateral knee pain. (Tr. 241). She had been using Tramadol with minimal relief. On examination, her gait was normal. (Tr. 242). Left knee had crepitus with passive range of motion, and right knee had mild crepitus on passive range of motion. Both knees had enlarged bony deformities. Motor exam was normal. Claimant received a Depo Medrol injection and was prescribed Lortab as needed for severe pain. (Tr. 243).

After failed conservative therapy, claimant underwent right total knee arthroplasty at Chabert on January 4, 2013. (Tr. 255-59). During the surgery, the joint was found to have inflamed synovium, "more consistent with rheumatoid arthritis than osteoarthritis." (Tr. 267). Post-operative testing confirmed the diagnosis of rheumatoid arthritis. (Tr. 261, 263).

On January 23, 2013, claimant was doing well. (Tr. 263). She was instructed to continue physical therapy, and referred to rheumatology. She was prescribed Percocet.

### B. Hearing Testimony

At the hearing held on May 9, 2013, claimant was 55 years old. (Tr. 24). She testified that she was 5 feet 11 inches tall and weighed 182 pounds. (Tr. 24-25). She did not have a

driver's license. (Tr. 25).

Claimant was a high school graduate. She had last worked as a day care worker in 2010.

Regarding complaints, claimant testified that she underwent a right knee replacement, and was supposed to have one on the left knee after the right one had healed. (Tr. 28). She stated that her knee pain was about seven on a scale of zero to 10. She also complained of arthritis in her shoulder, knee and hands.

Claimant took pain medications, but they did not relieve her symptoms. (Tr. 25). She reported that recently, she had started vomiting from the medicines. (Tr. 26). She had trouble sleeping because of pain. (Tr. 29). She stated that in addition to her pain medications, she took Aleve or Tylenol, and took baths two to three times a day.

As to restrictions, claimant said that she could walk about 50 feet, and stand five to 10 minutes before her back started to hurt. (Tr. 26). She testified that she could not walk without her cane. She stated that she could sit about 20 minutes, and could not lift much, not even a gallon of milk. (Tr. 26-27).

Regarding activities, claimant testified that she went from the chair to the bed all day long. (Tr. 29). She watched television during the day. (Tr. 30). She did no housework, laundry or shopping. (Tr. 27). She had a walking stick, and used a walker when she got up in the morning. (Tr. 30).

The vocational expert ("VE"), Donald Rue, classified claimant's past work as a day care director as sedentary with a Specific Vocational Preparation ("SVP") of seven, and a day care worker as light with an SVP of four. (Tr. 32). The ALJ posed a hypothetical in which he asked the VE to assume a 55-year-old claimant with 12 years of education, with the exertional ability to

perform sedentary work with the following limitations: she could sit continuously no more than 20 minutes, stand continuously no more than 10 minutes, and had to alternate.  (Tr. 32).  In response, Mr. Rue testified that she could return to her prior work as a day care director.

### C. Argument

Claimant argues that: (1) the ALJ erred in failing to consider whether she met or medically equaled Listing 14.09(A)(1) (inflammatory arthritis) at step three; (2) the ALJ's opinions regarding her functional limitations have no medical opinion support; there was no substantial evidence supporting the RFC finding as no consultative examination was performed and no medical opinions were offered by the State agency, and (3) the ALJ's residual functional capacity assessment ("RFC") fails to provide specificity regarding the sit/stand option and critically undermines his step four finding that claimant can perform her prior work as a day care supervisor while changing positions every 20 minutes.  Because I find that the ALJ should have sent claimant for a consultative examination for her knee problems and rheumatoid arthritis, and failed to consider the side effects of her medications on her residual functional capacity, I recommend that this case be **REMANDED**.

First, claimant asserts that the ALJ erred in failing to consider whether she met or medically equaled Listing 14.09(A)(1).

The Social Security Listing of Impairments for inflammatory arthritis is found at § 14.09, which provides as follows:

14.09 Inflammatory arthritis. As described in 14.00D6.[2] With:

A. Persistent inflammation or persistent deformity of:

1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6).[3]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(A)(1).

In evaluating claimant's impairments, the ALJ found that claimant had the following severe impairments: right and left knee problems, and right total knee replacement. (Tr. 10). While he considered section 1.00 of the musculoskeletal system listings, he did not mention Listing 14.09 for inflammatory or rheumatoid arthritis. (Tr. 12).

Claimant argues that the ALJ's finding that claimant does not meet or medically equal Listing 14.09(a)(1) is a "bare conclusion [] beyond meaningful judicial review," citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). [rec. doc. 8, p. 7]. In *Audler*, 501 F.3d at 448, the

---

[2]Section 14.00D6 provides: "a. General. The spectrum of inflammatory arthritis includes a vast array of disorders that differ in cause, course, and outcome. Clinically, inflammation of major peripheral joints may be the dominant manifestation causing difficulties with ambulation or fine and gross movements; there may be joint pain, swelling, and tenderness. The arthritis may affect other joints, or cause less limitation in ambulation or the performance of fine and gross movements. However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss), inflammatory arthritis may result in an extreme limitation. . . . c. Inflammatory arthritis involving the peripheral joints. In adults, inflammatory arthritis involving peripheral joints may be associated with disorders such as: (i) Rheumatoid arthritis ...

[3]Section 14.00C6 provides: "Inability to ambulate effectively has the same meaning as in 1.00B2b." Section 1.00B2b provides: "To Ambulate Effectively (1*) Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e*., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . . (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, *the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace* on rough or uneven surfaces, the inability to use standard public transportation, *the inability to carry out routine ambulatory activities, such as shopping and banking*, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation."  (emphasis added).

Fifth Circuit found that an ALJ's failure to identify the listing for which the claimant's symptoms failed to qualify or to provide any explanation as to how she made that determination constituted error as ". . . '[s]uch a bare conclusion is beyond meaningful judicial review.' " *Id*. (*quoting Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (footnote omitted)); *Smith v. Astrue*, 914 F.Supp.2d 764, 783-84 (E.D. La. 2012).  Although an ALJ is not always required to do an exhaustive point-by-point discussion of the evidence, his or her decision must be susceptible of thoughtful court scrutiny.  *Smith*, 914 F.Supp.2d at 784.  However, even where a step three violation has occurred, such must be subjected to a harmless error analysis to determine whether the substantial rights of a party have been affected.  *Id*.  That showing typically requires a claimant to demonstrate that her impairment satisfies the criteria of a particular listing. *Id*.

The record indicates that claimant had already had a right knee replacement, and was having left knee problems including enlarged bony deformity and crepitus with passive range of motion.  (Tr. 242).  Additionally, claimant testified that she could not walk without her cane, and used a walker in the morning when she got up.  (Tr. 26, 30).  Further, her doctors told her that she needed a left knee replacement once her right knee had healed.  (Tr. 28).

Moreover, diagnostic testing confirmed the diagnosis of rheumatoid arthritis.  (Tr. 261, 263).  No evidence was introduced to contradict these findings, other than a Residual Functional Capacity ("RFC") Assessment completed by Linda Nelson, a single decision maker ("SDM").[4]

Claimant argues that there is no substantial evidence supporting the ALJ's RFC finding as there was no opinion from a treating, examining or non-examining physician. [rec. doc. 8, p. 7; rec. doc. 10, pp. 1-2].  In response, the Commissioner asserts that a medical source statement

---

[4] *See* 20 C.F.R. § 404.906 (explaining single decisionmaker model of disability determination).

is a type of evidence that an adjudicator may consider when assessing RFC, and that the ALJ was not required to obtain his RFC finding directly from a consulting or reviewing physician's medical source statement. [rec. doc. 9, p. 4].

The Social Security Regulations provide, in pertinent part, as follows:[5]

> RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any "medical source statements" -- *i.e.*, opinions about what the individual can still do despite his or her impairment(s)-- submitted by *an individual's treating source or other acceptable medical sources*.

(emphasis added). SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996).

Under the Social Security Regulations, a medical consultant must be *an acceptable medical source* identified in § 404.1513(a)(1) or (a)(3) through (a)(5); that is, a licensed physician (medical or osteopathic), a licensed optometrist, a licensed podiatrist, or a qualified speech-language pathologist. (emphasis added). 20 C.F.R. § 404.1616(b). "Agency policy is that findings made by SDMs are not opinion evidence that Administrative Law Judges (ALJs) or Attorney Adjudicators (AAs) should consider and address in their decisions." (emphasis in original). 9/14/2010 Memorandum by Acting Associate Chief Administrative Law Judge John P. Costello, "Consideration of Single Decisionmaker (SDM) Residual Functional Capacity Assessments and Other Findings – REVISED." [rec. doc. 10, Exhibit A] (*citing* Programs Operations Manual System (POMS) DI 24510.050 (available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510050 (last visited 1/22/16) ("SDM-completed

---

[5]The Fifth Circuit has determined that the Social Security Administration's rulings are not binding on the court, but they may be consulted when the statute at issue provides little guidance. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). The Fifth Circuit has frequently relied upon the rulings in evaluating ALJs' decisions. *Id*. (relying on SSR 96-8p).

forms are not opinion evidence at the appeal levels.").

The Fifth Circuit has consistently held that an ALJ may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. *Williams v. Astrue*, 355 F. App'x 828, 832 n. 6 (5th Cir. Dec. 2009) (*citing Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995). Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions. *Id*.; *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (courts have warned ALJ's against "playing doctor" and making their own independent medical assessments). Absent some explanation from the ALJ to the contrary, claimant would appear to have met her burden of demonstrating that she meets the Listing requirements for § 14.09, and therefore her substantial rights were affected by the ALJ's failure to set out the bases for his decision at step three. *Audler*, 501 F.3d at 449.

Claimant argues that the ALJ should have sent her for a consultative examination. [rec. doc. 10, pp. 3-4]. Under some circumstances, a consultative examination is required to develop a full and fair record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987); *Guidry ex rel. C.N.H. v. Colvin*, 2014 WL 4369647, *10 (W.D. La. Sept. 1, 2014) (Doherty, J.). The decision to require such an examination is discretionary. *Jones*, 829 F.2d at 526. In *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977), the Fifth Circuit stated "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." A claimant must "raise a suspicion concerning such an impairment necessary to require the ALJ to order a consultative examination to discharge his duty of 'full inquiry' under

20 C.F.R. § 416.1444." *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989) (*quoting Jones*, 829 F.2d at 526).

Based on the medical records and the hearing testimony, claimant has raised a suspicion concerning her impairments necessary to require the ALJ to order a consultative examination. The most recent reports indicate that claimant was still having left knee problems, including bony deformity and crepitus, and a diagnosis of rheumatoid arthritis. (Tr. 242, 261, 263). Further, claimant testified at the hearing that she could not walk without a cane or walker. (Tr. 26, 30). Thus, I find that the ALJ erred in failing to develop the record as to claimant's rheumatoid arthritis and knee problems, resulting in a defective residual functional capacity assessment.

Additionally, the undersigned notes that the ALJ failed to consider the side effects from claimant's medications. The records indicate that claimant was taking Lortab, Tramadol, and Percocet, all of which are opioid/narcotic medications designed for the relief of moderate-to-severe pain, and are also known to cause drowsiness/sedation. Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (*citing* 20 C.F.R. § 404.1529(c)(3)(iv)). The ALJ failed to do so; thus, he committed error.

### III. CONCLUSION

For the foregoing reasons, it is my recommendation that the Commissioner's decision be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to send claimant for a consultative examination regarding her knee impairments and rheumatoid arthritis and to consider the side effects of her medications in the residual functional capacity assessment. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). *See Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY**

**FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

 Signed this 25th day of January, 2016, at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE